UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JONATHAN ZAMORANO,<br><br>   Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>   Defendant. | Case No. EDCV 05-00119 AJW<br><br>MEMORANDUM OF DECISION |

  Plaintiff filed this action seeking review of a decision by the Commissioner of the Social Security Administration ("Commissioner") denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

## Administrative Proceedings

  Plaintiff filed an application for SSI benefits on November 30, 2001, alleging that he had been disabled since January 1, 1990 due to "chronic depression and bouts with suicidal tendencies." [JS 2; Administrative Record ("AR") 77-79, 88].[1] After plaintiff's application was denied at the initial and reconsideration levels [AR 37-30, 43-46], a hearing was conducted on

---

[1] Plaintiff filed a prior SSI application on March 8, 2001 that was denied at the initial level and not pursued. [See JS 2; AR 14].

May 3, 2003 by Administrative Law Judge John W. Belcher (the "ALJ"). [AR 314-346].  After receiving testimony from plaintiff, who was represented by counsel, and from a medical expert, the ALJ continued the hearing to obtain a consultative psychiatric examination. [AR 344-346]. A supplemental hearing was conducted on November 17, 2003, during which testimony was received from plaintiff, who was again represented by counsel, plaintiff's father, and from a vocational expert.  [AR 347-371].

In a written decision dated December 19, 2003, the ALJ found that plaintiff had a severe mental impairment in the form of depression and a personality disorder, but that he retained the residual functional capacity to perform work available in significant numbers in the national economy. [AR 19–20].  The ALJ therefore concluded that plaintiff was not disabled at any time through the date of his decision. [AR 20].  The Appeals Council denied plaintiff's request for review of that decision. [AR 4-6].

The parties have stipulated that the ALJ fairly and accurately summarized the material medical evidence and testimony of record, with the exception of those portions of the record addressed in plaintiff's argument in the Joint Stipulation. [JS 3].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Also, where the evidence is susceptible to more than one inference, and one of which supports the ALJ's positions, ALJ's conclusion must be upheld. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035,

1039 (9th Cir. 1995).

## Statement of Disputed Issues

The disputed issues are whether the ALJ (1) improperly rejected competent evidence from plaintiff's father and failed to consider other important lay witness testimony; and (2) whether the ALJ appropriately determined that the treating psychiatrist's opinion was based solely on plaintiff's subjective complaints and was a clear example of patient accommodation. [JS 3].

## Discussion

### Lay witness testimony

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the testimony of plaintiff's father, Raymond Zamorano ("Zamorano"), and letters from Cleveland Hubbs ("Hubbs") and Reginald Butler ("Butler"). [See JS4-7].

#### Zamorano

Zamorano testified that his son, aged 32, lived with him, his wife, and plaintiff's younger brother. [AR 350]. He said plaintiff had worked off and on at small jobs but was not presently working. [AR 351]. Zamorano believed his son was "emotionally ... unable to take care of himself and .. to take care of his needs." [AR 351]. Asked why he thought so, Zamorano said his son was "insecure with himself"; "has a lot of anxiety, depression"; seemed to withdraw when Zamorano tried to communicate or "work with" him; had lost interest in computers, which he used to enjoy; had gained weight while taking anti-depressant medication; sometimes stayed in bed for "longer periods of time"; spent a lot of time in his room; and sometimes cried when he was under a lot of pressure. [AR 352-355]. Other than computers, Zamorano could not identify activities that his son formerly enjoyed and had lost interest in. He was not sure about plaintiff's bedtime and sleep habits, but he said plaintiff had told him he had difficulty sleeping. [AR 353-354]. He said plaintiff had expressed suicidal thoughts, and he had spoken to plaintiff's doctors about it but that they did not seem concerned about it. [AR 355]. Zamorano was not aware of any hallucinations, delusions, or abnormal speech on his son's part. He said his son left the house to go to the store and doctor visits, but had hardly any friends

1 and did not socialize. Asked if his son attended school, Zamorano replied that plaintiff was
2 "taking a few classes as far as I know" and went on his own to school, although he also said that
3 plaintiff was "not very regular" in his attendance. Zamorano said that his son went to church
4 "not very regularly," but he agreed that plaintiff went to church three times a week when told
5 that plaintiff had so testified during the first hearing. [AR 359]. Asked how frequently plaintiff
6 had "down periods," Zamorano said "it's hard for me to say. I never really keep track of it except
7 when ... he's down, you know, I know what he's going through." [AR 356]. Zamorano said that
8 he had "tried to encourage [plaintiff] to work and its's been — he's been very hard to us as a
9 family he's not supporting himself and we're doing the best we can to help him out." [AR 357].
10 Zamorano also testified that plaintiff's "doctors have been helping him and he seems to be
11 doing some good, but it's going to take time for him to ... get it cured.... They know that the
12 medications do not completely cure him .... But at least it helps him to cope ...." [AR 358].

13       Descriptions of family members in a position to observe a claimant's symptoms and daily
14 activities are competent evidence and must be considered in determining how an impairment
15 affects a claimant's ability to work. 20 C.F.R. §404.1513(e)(2); Smolen v. Chater, 80 F.3d
16 1273, 1288-89 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918-919 (9th Cir. 1993);
17 Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). The ALJ may not disregard the
18 testimony of lay witnesses without some articulated legitimate justification. Nguyen v. Chater,
19 100 F.3d 1462, 1467 (9th Cir. 1996) (holding that the Commissioner must take into account
20 lay testimony as to a claimant's symptoms unless she expressly determines to disregard such
21 testimony, in which case "[s]he must give reasons that are germane to each witness")(quoting
22 Dodrill, 12 F.3d at 919).

23       Plaintiff argues that the ALJ "rejected [Zamorano's] testimony by concluding, 'The father
24 has a potential financial interest in his son's receipt of disability benefits and is not an unbiased
25 source.'" [JS 4 (quoting AR 17-18)]. If the ALJ had discredited Zamorano's testimony solely
26 because he is plaintiff's father, that would be reversible error. Smolen, 80 F.3d at 1283-84
27 ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her
28 testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of

4

particular value."). Standing alone, a claimant's financial motivation for obtaining benefits is not a valid reason for discrediting the testimony of the claimant or family members. See Ratto v. Secretary, Dept. of Health and Human Services, 839 F.Supp. 1415, 1428-29 (D. Or. 1993) ("By definition, every claimant who applies for [disability] benefits does so with the knowledge--and intent--of pecuniary gain. That is the very purpose of applying for [disability] benefits.... If the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or friends, or family) would ever be found credible."). On the other hand, an ALJ is not required to ignore evidence suggesting that a claimant is seeking benefits for financial reasons independent of any allegedly disabling impairment. See Gaddis v. Chater, 76 F.3d 893, 896 (8th Cir. 1996) (holding that there was a "strong element of secondary gain in this case" justifying the ALJ's negative credibility finding where the claimant sued his employer only after private benefits terminated, said he planned to work only until his lawsuit settled, and told a doctor he could get a minimum wage job at any time).

In this case, there is at least some suggestion that there were financial reasons independent of plaintiff's alleged mental impairment that motivated him to seek benefits as well as for his father's support of that effort. As the ALJ noted, plaintiff's father testified that supporting his 32 year-old son was a financial hardship for the family. During the first hearing, plaintiff testified that he was still living with his parents, and that he was "trying to get on a housing program" to get out of the house, but that had "been put on hold until I have some sort of income." [AR 319]. Asked what he was "trying to do to get an income," plaintiff answered, "I'm trying to get on SSI." [AR 319]. The ALJ told plaintiff that he remembered reading in the record that plaintiff had said that his "two biggest problems were ... financial problems and getting along with [his] dad," and plaintiff agreed that if he got a job and moved out of his parents' home, those "wouldn't be my problems then." [AR 331]. Plaintiff rejected the suggestion that his depression was attributable solely to what he called his "financial situation" and his relationship with his father, but he acknowledged that he was "severely in debt," with about $10,000 in credit card debt incurred for student loans, helping pay his mother's car

registration, clothes, other charges, and interest. [AR 331-332]. Plaintiff testified that his mother had "been helping me out with that [credit card debt] the best that she can," and that he had contemplated bankruptcy but had "heard it wouldn't help me with my credit card." [AR 332-333].

Asked about his employment status, plaintiff initially testified that he worked with his father cleaning carpets for "maybe a year or two" after he graduated from high school but did not "really do much of anything" after that. [AR 321-322]. Queried by the ALJ as to whether he had done no work during the 10 or 12 years since he stopped working with his father, plaintiff eventually admitted that he had worked half-time at a liquor store beginning in 1990 or 1991, after his alleged date of onset of disability, until 1998. [AR 88, 322, 326]. Pressed further, he also admitted that he had done some gardening work. [AR 322]. On further examination, the ALJ told plaintiff that one of the Commissioner's examining physician's had found plaintiff "guarded" and evasive in answers to questions about his employment and had given plaintiff a "rule out malingering" diagnosis, and he again probed plaintiff for information about his employment history. [AR 323-324]. Plaintiff responded that he "had a hard time explaining himself," but subsequently he admitted that after working with his father, he attended technical school in data processing for about six months. He briefly worked in a data processing job in the early 1990s but "found the job market swamped." [AR 324-325]. After technical school he began working at the liquor store four hours a day, five days a week. He did not work full-time because his employer did not need him full-time. [AR 322, 326]. Asked whether he had been paid under the table at the liquor store, plaintiff responded affirmatively, and he also testified that was why he was reluctant to mention that job. [AR 326-327]. As for his current plans, plaintiff said that he wanted to go back to school and learn to become a sign language interpreter. [AR 327]. He said he had twice dropped out of classes but that his doctor was encouraging him to keep going. [AR 327].

It is unnecessary to decide whether substantial evidence in the record as a whole supports the inference that the ALJ drew about the credibility of Zamorano's testimony due to his "financial interest" in plaintiff's receipt of benefits. The ALJ cited another reason that fully

supports his credibility determination, namely that Zamorano's testimony was largely cumulative of plaintiff's testimony and "would be subject to the same comment that the asserted limitations would not preclude" work with the RFC found by the ALJ. [AR 17].

Plaintiff concedes that Zamorano's testimony was consistent with his son's testimony about his symptoms and daily activities. [JS 4]. Plaintiff has not challenged the ALJ's finding that plaintiff's subjective symptoms were not fully credible and would not prevent him from performing work with the nonexertional limitations specified in the ALJ's RFC. That finding is supported by specific, convincing reasons based on substantial evidence. See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (stating that the ALJ may disregard subjective testimony if he or she provides specific, convincing reasons for doing so); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)(enumerating the factors an ALJ may consider in evaluating the credibility of subjective complaints).

The ALJ noted that the objective medical findings in the treating and examining records were mild, and all of the examining and nonexamining physicians had opined that plaintiff's mental impairment was not disabling. [See AR 16-18]. The ALJ also concluded that plaintiff's daily activities and inconsistencies in his testimony undermined his allegations of disabling depressive symptoms, anxiety, social withdrawal, and concentration deficits. [AR 17]. Plaintiff testified that he did what amounts to a full range of "cleaning and chores" around the house. [AR 17, 334]. He vacuumed, dusted, washed dishes, did laundry, and sometimes cooked. He also said he did the "majority" of the raking, watering, edging, and trimming plants in the yard. [AR 334]. He had a driver's license and drove a car. [AR 328, 336]. Plaintiff attended Jehovah Witness services on Sundays, Tuesdays, and Fridays. [AR 335]. The Friday and Sunday services lasted two hours and the Tuesday service an hour. [AR 335]. Plaintiff said door-to-door visitations were hard for him but he tried to do it "at least once a month" for one to two hours. [AR 335]. Plaintiff had "a very strong episode" of wanting to hurt himself a year earlier, and in the past he had experienced "fits of rage" where he "br[oke] stuff "and "dented my car a little bit," but he had noticed a "dramatic change" since he started taking medication (Zoloft and Zyprexa) and no longer had those feelings. [AR 319, 330].He said his depression "came and

went" and sometimes made him want to seclude himself, but he was trying to work on that. [AR 330-331]. He said he "still ha[d] some friends" but not close friends. [AR 328-329]. Plaintiff complained of difficulty concentrating and being easily distracted, but he also said he spent "a couple hours" a day on the Internet, doing research and playing games. [AR 333]. He also watched television three or four hours a day. [AR 333-334]. He had graduated from high school and was in special classes for reading but regular classes for other subjects.[AR 339-340].

The ALJ's reasons for discounting the alleged severity of plaintiff's subjective symptoms are specific, convincing, and supported by substantial evidence, and those reasons are sufficient to discredit plaintiff's father's cumulative testimony about his symptoms as well. See Lewis v. Apfel, 236 F.3d 503, 511-512 (9th Cir. 2001) (holding that the ALJ did not err in rejecting the consistent testimony of the claimant and family members that plaintiff was chronically fatigued, groggy, and lethargic where that testimony conflicted with the medical evidence; the claimant testified that he worked part-time because his employer restricted his hours, not for health reasons; and where the claimant participated in sports, attended church, cleaned, and vacuumed).

**Hubbs and Butler**

Plaintiff also contends that the ALJ erred in failing to consider, or at least articulate reasons for rejecting, letters submitted by Hubbs and Butler in support of plaintiff's disability claim. [See AR 112-113].

Hubbs's letter identifies him as "Pastor Hubbs" and says that he has known plaintiff for 30 years. [AR 112]. Hubbs writes that plaintiff suffers from "severe depression" which has made it "very difficult for plaintiff to socialize with his peers" or "adequately concentrate on any task that would make employment possible." Hubbs said he knew of "two or three attempts at employment and none of them could satisfy his monetary needs." [AR 112]. Hubbs said he had noticed a "great deterioration" in plaintiff's emotional health and had counseled him "numerous times" because he contemplated suicide. Hubbs said that plaintiff urgently needed "compensation" so that he could receive medical care, if nothing else. [AR 112].

Butler described himself as an overseer in the local Kingdom Hall where plaintiff was "a

1 regular member of the congregation." [AR 113]. He wrote to "confirm" that plaintiff is
2 suffering from depression. Plaintiff "tries very hard to get along with everyone and he tries to
3 make it a point to participate in" worship. Butler said that the congregation tried to comfort,
4 love, and encourage plaintiff to help him heal. [AR 113].

5 Hubbs and Butler are not family members in a position to observe plaintiff's symptoms
6 and daily activities. See Smolen, 80 F.3d at 1288-89; Dodrill, 12 F.3d at 919. Butler's letter
7 gives no concrete information about plaintiff's specific symptoms or impairments. Hubbs says
8 he has known plaintiff for 30 years, but he does not disclose the frequency or extent of his
9 interactions with plaintiff or the basis for his observations about plaintiff's socialization and
10 concentration. His conclusions about plaintiff's psychiatric condition are not the opinions of
11 a medical doctor, and his ultimate conclusion that plaintiff is not employable is a legal
12 conclusion reserved to the Commissioner. Hubbs's observation that plaintiff's "monetary needs"
13 were not satisfied by his past jobs obviously says nothing about plaintiff's disability. Because
14 those letters would not change the ALJ's decision, any error on his part in failing to comment
15 on them was harmless. See Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (holding
16 that the ALJ did not err in omitting discussion of a lay witness's testimony that his father's
17 stroke left him impaired because lay testimony is not equivalent to "medically acceptable
18 diagnostic techniques" that are ordinarily relied upon to establish a disability, and the ALJ
19 properly discounted lay testimony that conflicted with the available medical evidence); see also
20 Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (holding
21 that any error that the ALJ may have committed did not negate the validity of the ALJ's
22 ultimate conclusion that the claimant's testimony was not credible and was harmless);
23 Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (applying the harmless error rule in a
24 social security disability case).

25 **Treating physician's opinion**

26 Plaintiff contends that the ALJ erred rejecting the opinion of treating physician Dr.
27 Nguyen because it was based solely on plaintiff's subjective complaints and was a clear example
28 of patient accommodation. [See JS 7-10].

9

Dr. Nguyen signed a "Work Capacity Evaluation (Mental)" form dated March 2003]. At the top of the form, he wrote that "M.D. completed form [with] pt., who answered those questions as listed below." [AR 312]. On that questionnaire, Dr. Nguyen checked boxes indicating that plaintiff had a number of moderate, marked, and extreme limitations. [AR 312-313]. He did not provide any explanation or findings to support the indicated limitations.

The ALJ rejected Dr. Nguyen's opinion because it was "completed with the claimant's help and was essentially 16 questions that were answered by the claimant and recorded by the physician." [AR 17]. The ALJ also stated that those limitations were "not consistent with the medical evidence, medical expert testimony, the consultative examinations, or the State Agency review physicians. The assessment was a clear example of patient accommodation." [AR 19].

Where, as here, a physician has assessed a claimant's limitations based on the subjective responses of a claimant whose subjective complaints have been found not credible, and where the physician provides no objective or clinical support for the assessed limitations, the ALJ is justified in rejecting that opinion. See Batson, 359 F.3d at 1195 & n.3 (9th Cir. 2004) (upholding the ALJ's rejections of an opinion that was "conclusionary in the form of a check-list," and lacked supporting clinical findings); Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.")(citation omitted); Morgan v. Chater, 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'") (quoting Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)); Brawner v. Secretary of Health & Human Services, 839 F.2d 432, 433-34 (9th Cir. 1988) (per curiam) (stating that medical conclusions are entitled to less weight to the extent that they rely on the claimant's properly discounted subjective history).

///

///

///

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Therefore, the decision of the Commissioner is **affirmed**.

**IT IS SO ORDERED.**

DATED: October 26, 2005

_____/S/_____
ANDREW J. WISTRICH
United States Magistrate Judge